Filed 8/6/25  Kalajian v. Calidi Biotherapeutics CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| TONY KALAJIAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIDI BIOTHERAPEUTICS, INC., et al., <br><br> Defendants and Respondents. | D084437 <br><br><br> (Super. Ct. No. 37-2023-00049813-CU-DF-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Brownlie Hansen, Robert Brownlie, Ryan T. Hansen and Chaz R. Glick for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Matthew G. Kleiner, Brandon D. Saxon, Brian L. Frary and Tara N. Swanson for Defendant and Respondent, Calidi Biotherapeutics, Inc.

Lewis Brisbois Bisgaard & Smith, Kyle Ross Maland and Brian M. Jun for Defendants and Respondents, Allan Camaisa and Wendy Pizarro Campbell.

Tony Kalajian appeals from an order granting a motion to disqualify his retained counsel, Robert Brownlie, brought by Calidi Biotherapeutics, Inc.

(Calidi), Allan Camaisa, and Wendy Pizzaro (collectively, Respondents). He asserts the trial court applied an incorrect legal standard in granting the motion and that substantial evidence does not support the disqualification under the correct legal standard. We disagree and affirm the order.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2023, Brownlie filed a complaint on behalf of Kalajian and against Respondents for constructive discharge and defamation. As alleged in the complaint, Kalajian joined Calidi as the chief accounting officer and interim chief financial officer in 2021. At that time, Calidi was a privately held company engaged in research and development of cancer therapies. Kalajian helped develop the finance and accounting department to prepare the financials necessary for Calidi to merge into a publicly traded special purpose acquisition company. A dispute arose between Kalajian and Camaisa, the chief executive officer of Calidi, about bonuses related to the merger, and that dispute led to the present litigation.

Calidi filed a motion to disqualify Brownlie and his law firm, Brownlie Hansen, LLP. Calidi asserted Brownlie represented Camaisa and companies that Camaisa founded or co-founded on numerous matters, beginning in 1993 and continuing for over 20 years. Brownlie also represented Camaisa, as the majority shareholder and "Seller's Representative" of a company called Parallel 6, in a dispute that arose between the selling stockholders and the buyer in 2019. Camaisa stated that he communicated with Brownlie and his

---

[1]     While the appeal was pending, Kalajian filed a notice of substitution of counsel, removing Brownlie as his counsel. In a related motion to lift a stay that the trial court had put into place during the pendency of the present appeal, Kalajian's current counsel indicated they intended to remain on as counsel through resolution of the case. Respondents moved to dismiss the appeal as moot. In a concurrently filed order, we deny the motion to dismiss.

prior firm on "a broad array of legal issues that are or could be relevant to this lawsuit. These issues related to his and his company's management policies, relationships with employees, employment practices, internal policies, capital structure, corporate governance, and even his personal investments/loans in these companies." In addition, Camaisa disclosed personal and confidential information to Brownlie, "including his net worth, assets and liabilities, personality and habits, and other private information." Camaisa executed a declaration in support of the motion and the foregoing assertions.

Kalajian opposed the disqualification motion. He asserted Brownlie had not done any significant work for Camaisa or his companies since 2002, and that Brownlie never represented Camaisa in his personal capacity. Brownlie executed a declaration in support of the motion denying many of Camaisa's assertions.

The trial court set the matter for hearing and Camaisa and Pizarro joined the motion prior to the hearing.

After hearing argument, the trial court granted Respondents' motion to disqualify Brownlie. The court noted that, although Brownlie could not recall the details of work he billed for in February 2019, Brownlie acknowledged that he did meet with Camaisa and that everything said during the meeting with Camaisa was protected by attorney-client privilege. The court found that Brownlie's declaration and representations before the court were not sufficient to dispute Calidi's assertion that Brownlie gained confidential information adverse to Calidi and/or Camaisa and that the evidence established a substantial relationship between the subject matter of the prior and current representations. Accordingly, the trial court exercised its discretion in favor of disqualification.

3

Kalajian filed a timely notice of appeal.

## II.    DISCUSSION

Kalajian asserts the trial court erred by failing to apply the correct legal standard.  He contends the trial court incorrectly rejected his assertion that any confidential information he obtained in his prior representation of Camaisa or Calidi must be material to his current representation of Kalajian to require disqualification.  In addition, he asserts Respondents did not provide substantial evidence to establish any confidential information was material under the correct legal standard.

### A.    Relevant Legal Principles and Standard of Review

"A motion to disqualify counsel brings the client's right to the attorney of his or her choice into conflict with the need to maintain ethical standards of professional responsibility."  (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698, 705 (*Jessen*).)  "The paramount concern is the preservation of public trust in the scrupulous administration of justice and the integrity of the bar."  (*Ibid.*)  "We review the trial court's decision under the familiar abuse of discretion standard."  (*Ibid.*)  In doing so, we give deference to the trial court's factual findings, so long as they are supported by substantial evidence.  (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.)

As our high court has explained, "[t]he 'substantial relationship' test mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other.  Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to

4

confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283 (*Flatt*).)

The foregoing presumption avoids the disclosure of the former client's confidential information that would otherwise derive from an inquiry into the attorney's actual knowledge. (*Jessen, supra,* 111 Cal.App.4th at p. 706.) Successive representations are " 'substantially related' when the evidence before the trial court supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Id.* at p. 713.) When a substantial relationship is established, " 'the inquiry ends and the disqualification should be ordered.' " (*Id.* at p. 706.)

At the same time, as the trial court here pointed out, "[a] former client may [also] seek to disqualify a former attorney from representing an adverse party by showing the former attorney actually possesses confidential information adverse to the former client." (*H.F. Ahmanson & Co. v. Salomon Bros.* (1991) 229 Cal.App.3d 1445, 1452.) "[T]he substantial relationship presumption is only required when the former client cannot [or does not] independently establish that the attorney acquired confidential information in the first case that could be used in the successive case." (*Costello v. Buckley* (2016) 245 Cal.App.4th 748, 755 (*Costello*).)

5

### B. The Trial Court Did Not Abuse Its Discretion

In this case, Respondents asserted both that Brownlie did obtain specific confidential information through his prior representation of Camaisa and/or prior entities related to Calidi, and that there was a substantial relationship between Brownlie's prior representation of Camaisa and his current representation of Kalajian, sufficient to raise the presumption that Brownlie had confidential information adverse to Camaisa and/or Calidi under the substantial relationship test.

In his sworn declaration, Brownlie denied representing Camaisa in connection with Calidi, Calidi's predecessor company StemImmune, or any other related subsidiaries. He also denied representing Parallel 6 (although he did not directly address the allegation that he represented Camaisa as the stockholder representative). He admitted billing 3.3 hours of work to Camaisa in 2019, presumably related to the Parallel 6 matter, but asserted that a different attorney at the firm held the client relationship. Brownlie stated that he had no independent recollection of the work but noted that the bill suggested it was related to an earnout dispute.[2]

The trial court initially found that Camaisa had presented evidence, through his declaration and associated exhibits, that Brownlie did receive confidential information that he could use in the present case, and that Brownlie did not adequately rebut that evidence in his own declaration. At

---

[2] We hereby deny Kalajian's pending request for judicial notice, filed concurrently with his reply brief, on February 6, 2025. The records at issue were not presented in or considered by the trial court and are not relevant to the resolution of the present appeal. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 687–688, fn. 10 [denying request for judicial notice filed at the time of the reply brief as to records not before the trial court as both late and not relevant to the disposition of the appeal].)

the outset of argument on the disqualification motion, the trial court noted that Brownlie did not expressly deny coming into possession of confidential information adverse to Camaisa.

It appears that, at least initially, the trial court was prepared to find Brownlie disqualified based on the actual possession of confidential information. However, Brownlie stated on the record that he had not obtained any confidential information adverse to Camaisa or Calidi through his prior representation of Camaisa or the other related entities. At the same time, though, he conceded that he did meet with Camaisa in 2019, in an attorney-client privileged setting, but could not recall the specifics details of the meeting.

In response, counsel for Respondents pointed out that StemImmune was the direct predecessor to Calidi, and that Camaisa's declaration had included exhibits demonstrating conversations between himself and Brownlie concerning StemImmune. He asserted further that Brownlie's prior representation of Camaisa was broad and included other prior matters involving wrongful termination and defamation, similar to the current litigation. Counsel asserted Brownlie's representation was direct and, therefore, it created a presumption that he had confidential information, such that the court did not need to "delve into his mind as to what [confidential information] he possesses."

After hearing argument, the trial court revised its prior tentative decision. The court noted that both sides provided analysis as to whether there was a "substantial relationship" between the current matter and Brownlie's prior representation of Camaisa, Calidi, and/or related entities, but that Respondents *also* asserted that Brownlie actually possessed confidential information directly related to the present lawsuit.

7

The court found that Camaisa's declaration and the associated exhibits established that Brownlie did represent Camaisa and did gain "possession of confidential information adverse to Camaisa and/or Calidi in this case." And it found, further, that neither Brownlie's declaration nor his representations in court were sufficient to dispute that evidence. In doing so, the court noted that Brownlie did not recall the details of the 2019 meeting, but conceded that it was subject to attorney-client privilege. In that context, the court stated it was not persuaded by the arguments raised by Brownlie. The court continued:

> "To the extent attorney Brownlie applies a 'material/critical importance' standard to an attorney's *actual* possession of confidential information, nothing in *Costello* or any other authorities set forth above contain such a requirement."

The court then went on to find "the same result is required under the substantial relationship test" set forth in *Flatt*. After discussing the legal principles in *Flatt* and *Jessen*, the court explained:

> "Calidi submits evidence that attorney Brownlie had a direct professional relationship with Camaisa in both Camaisa's individual capacity and in Camaisa's capacity as principal of entities including High Technology Solutions, Inc. (HTS) and the predecessor entities to Calidi. Based on the evidence presented, including the evidence set forth above, the court finds Calidi and Camaisa establish that the legal advice and services provided by attorney Brownlie on matters including the Reeves employment case, the Genelux litigation and Parallel 6 *are sufficiently connected to the legal issues in this case*. As such, attorney Brownlie is presumed to possess the confidential information of Camaisa and Calidi."

We perceive no error in the trial court's analysis, particularly as it relates to the substantial relationship test. The trial court found that Brownlie's prior representation of Camaisa was sufficiently connected to the

8

issues raised in the current litigation to raise the presumption that Brownlie received confidential information adverse to Camaisa and Calidi in the present litigation through his prior representation of Camaisa. There was no requirement for the trial court to make some further finding that a particular piece of the *presumed* confidential information was material to a specific fact or issue in the current litigation, nor could it, since the entire purpose of the substantial relationship presumption is that it serves as a substitute for consideration of actual, specific confidential information. (See *Flatt, supra,* 9 Cal.4th at p. 283; *Jessen, supra,* 111 Cal.App.4th at p. 706.)

The trial court had already explained how the general subject matter of the prior representation overlapped with the current litigation, and that the associated confidential information was therefore "adverse to Camaisa and/or Calidi *in this case.*" As the trial court then explained, "based on the evidence presented, including the evidence set forth above," the legal advice and services Brownlie provided Camaisa were "sufficiently connected" to the legal issues in the present case. Accordingly, it is inherent in the trial court's ruling that the evidence "supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." (*Jessen, supra,* 111 Cal.App.4th at p. 713.) The trial court applied the correct legal standard and found that disqualification was warranted under the substantial relationship test.

Kalajian asserts further that there is not substantial evidence to support a finding that the confidential information that Brownlie obtained in his previous representation of Camaisa is *material* to the current case. As we

9

have just discussed, the court did not need to point to specific confidential information in Brownlie's possession that was material to the current litigation. "Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed*." (*Flatt, supra,* 9 Cal.4th at p. 283.) In making this argument, Kalajian either ignores the trial court's separate finding as to the substantial relationship test or he misunderstands the legal framework of the test itself.

The possession of material confidential information is presumed based on the substantial relationship between the prior and current representation, and since it is presumed, the specific details of the information are necessarily not known. Respondents did not need to demonstrate that Brownlie had specific pieces confidential information that are in fact material to the present litigation. Rather, they had to demonstrate, as the trial court found they did, that the subject matter of the prior representation was sufficiently related to that of the current litigation in a manner that would allow the court to make a reasonable inference that Brownlie had received confidential information that he could use in an adverse manner to Camaisa and/or Calidi in the present litigation. To the extent Kalajian asserts that there is insufficient evidence to support the trial court's finding that the prior representation was sufficiently connected to the legal issues in the present litigation to support the presumption, we disagree.

Kalajian concedes that Brownlie represented HTS, a company founded and led by Camaisa, in various litigation matters from the early 1990's until sometime around 2001 or 2002. Brownlie further concedes that he was generally the partner overseeing the matters. Camaisa provided evidence in

10

the form of communications with Brownlie, notes he took during a meeting with Brownlie, and at least one bill, establishing that relationship continued thereafter, at least through February 26, 2019. And in his sworn declaration, Camaisa asserted the representation involved a broad range of "issues related to his and his company's management policies, relationships with employees, employment practices, internal policies, capital structure, corporate governance, and even his personal investments/loans in these companies."

The trial court found the declaration "provides a sufficient showing of the nature of the communications and how they relate to the current representation," which involves constructive discharge and defamation claims related to a dispute among executive-level employees in Camaisa's most recent company. The trial court was not making general characterizations, but rather considered the evidence presented concerning the specific issues at play and the types of counsel provided in the past and present representations.

Brownlie attempts to contradict Camaisa's assertions in his own declaration, but the trial court did not find his declaration, or his representations in court, to be sufficient, particularly in light of his admission that he could not recall the details of the work that he billed for in February 2019. We do not reweigh the evidence on appeal.

Finally, Brownlie relies on *Khani v. Ford Motor Co.* (2013) 215 Cal.App.4th 916, in which the appellate court found the trial court abused its discretion in granting a motion to disqualify counsel. (*Id*. at pp. 921−922.) The issue there was that the trial court did not look beyond the general subject matter of the litigation, and "assumed all lemon law cases raise similar legal issues." (*Id*. at p. 921.) In reversing that decision, the appellate

11

court noted there was no evidence that Ford "had any policies, practices, or procedures generally applicable" to such cases, or even that the same decision makers were involved. (*Id*. at p. 922.) Here by contrast, the trial court did not rely on the general nature of the claims and, instead, considered the long-standing relationship between Camaisa and Brownlie and expressly found that the type of information that Brownlie likely received "goes beyond mere 'playbook information.' " (See *ibid.; Wu v. O'Gara Coach Co., LLC* (2019) 38 Cal.App.5th 1069, 1083−1084 [allegation that attorney acquired general "playbook information" while serving as nonlawyer executive insufficient to establish actual possession of confidential information requiring disqualification].)

In sum, substantial evidence supports the trial court's findings and the trial court did not abuse its discretion in finding disqualification was appropriate under the substantial relationship test.

## III.   DISPOSITION

The order is affirmed. Respondents are awarded costs on appeal.


KELETY, J.

WE CONCUR:


DATO, Acting P. J.


CASTILLO, J.

12